IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      **Case No. 01-40020-01**
                                             05-3110-RDR

LAVELLE HENDERSON,

        Defendant.

**MEMORANDUM AND ORDER**

This case is now before the court upon defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255. As background to this order the court shall review the indictment and verdict in this case, as we did in the order issued to deny defendant's motion for a new trial. Doc. No. 169.

REVIEW OF THE INDICTMENT AND THE VERDICT

The amended indictment in Count 1 alleged a continuing criminal enterprise from on or about January 1, 1994 until early 2001 in violation of 21 U.S.C. § 848. Twelve predicate acts were alleged as part of Count 1. Count 2 alleged a conspiracy from January 1, 1994 to March 14, 2001 to possess with intent to distribute in excess of 50 grams of cocaine base in violation of 21 U.S.C. § 846. Count 3 alleged a conspiracy from January 1, 1994 to March 14, 2001 to possess with intent to distribute in excess of 5 kilograms of cocaine hydrochloride in violation of 21 U.S.C. § 846. Count 4 alleged a conspiracy to launder money

in violation of 18 U.S.C. §§ 1956(h) and 1957(a).

The predicate acts alleged as part of Count 1 were as follows:

1. From at least on or about the 1st day of January, 1994 and continuing until at least the 28th day of April 1997, exact dates being unknown to the grand jury, in the District of Kansas and elsewhere, the defendant, Lavelle Henderson, did knowingly, willfully and unlawfully combine, conspire, confed-erate and agree with Lapreasha Wynne and other persons, the identities of which are unknown to the grand jury, to possess with the intent to distribute and distribute in excess of 5 kilograms of a substance or mixture of substances containing a detectable amount of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, §§ 846 and 841;

2. On or about May 9, 1995 in the District of Kansas, the defendant, Lavelle Henderson, did distribute approximately 24.71 grams of cocaine base, commonly known as "crack" cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 841(a)(1);

3. On or about the 1st day of January, 1996 and continuing until on or about the 8th day of May 1996, the exact dates being unknown to the grand jury, in the District of Kansas and elsewhere, the defendant, Lavelle Henderson, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with Anthony Henderson, Hattie McNeal, Kevin Elmore and with other persons, the identities of which are unknown to the grand jury, to possess with the intent to distribute and distribute in excess of 50 grams of a substance or mixture of substances containing a detectable amount of cocaine base, commonly known as "crack" cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 846;

4.  On or about July 12, 1997 in the State of California, the defendant, Lavelle Henderson, did possess with the intent to distribute methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 841(a)(1) and California Health and Safety Code, § 11378;

5.  On or about July 12, 1997 in the State of California, the defendant, Lavelle Henderson, did possess with the intent to distribute cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 841(a)(1);

6.  On or about the 12th day of July, 1997, the exact dates being unknown to the grand jury, in the District of Kansas and elsewhere, the defendant, Lavelle Henderson, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with Lashonda Daniels, Shannon Brown and Gerald Jackson and with other persons, the identities of which are unknown to the grand jury, to possess with the intent to distribute in excess of 500 grams of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 846;

7.  On or about the 12th day of July, 1997 in the District of Kansas and elsewhere, the defendant, Lavelle Henderson, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with Lashonda Daniels, Shannon Brown and Gerald Jackson and with other persons, the identities of which are unknown to the grand jury, to possess with the intent to distribute approximately 72.19 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 846;

8.  On or about the 5th day of March, 1999 in the State of California, the defendant, Lavelle Henderson, did possess with the intent to distribute in excess of 500 grams of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United

    States Code, § 841(a)(1);

9. From on or about the 3rd day of March, 1999 to on or about the 5th day March, 1999, the exact dates being unknown to the grand jury, the defendant, Lavelle Henderson, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with Jaime Harris and with other persons, the identities of which are unknown to the grand jury, to possess with the intent to distribute in excess of 500 grams of a substance or mixture of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 846;

10. From at least as early as on or about the 28th day of June, 1999 and continuing until the date of the return of this indictment, the exact dates being unknown to the grand jury, in the District of Kansas and elsewhere, the defendant, Lavelle Henderson, did knowingly, willfully and unlawfully combine, conspire, confederate and agree with Doreen Nichole Woods and with other persons, the identities of which are unknown to the grand jury, to possess with the intent to distribute in excess of 500 grams of a substance or mixture of substances containing a detectable amount of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of Title 21, United States Code, § 846;

11. The violations listed in Counts 2 and 3 of this indictment, incorporated by reference herein as if fully set forth.

The jury found defendant guilty of all four counts of the indictment. The jury specifically found that defendant committed nine of the 12 alleged predicate acts in Count 1; the jury did not find that defendant committed predicate acts numbered 2, 5 and 6. To find defendant guilty of Count 1, the crime of operating a continuing criminal enterprise, the

government needed to prove, among other elements, that defendant committed at least three of the predicate acts and that the three violations were related to each other and amounted to a continuing series of violations, some of which occurred in the District of Kansas.  Following the verdict the court vacated defendant's convictions upon Counts 2 and 3 because they were considered lesser included offenses of the continuing criminal enterprise charge alleged in Count 1.

All of defendant's arguments in his § 2255 motion pertain to Count 1.

As already noted, the indictment described above is as <u>amended</u> by the court upon the motion of the government during the trial of the case.  Near the close of the government's case-in-chief, the court permitted the indictment to be amended to change the beginning dates of alleged criminal activity.  In Count 1, the starting date of the alleged continuing criminal enterprise was changed from April 1, 1992 to January 1, 1994.  The beginning date of the first predicate act in Count 1 was changed from April 14, 1992 to January 1, 1994.  The beginning dates of the conspiracies alleged in Counts 2 and 3 were also changed from April 14, 1992 to January 1, 1994.

DEFENDANT'S DIRECT APPEAL

On direct appeal, defendant was represented by different

counsel than the attorney who handled his trial.  Defendant argued on appeal:  1) sufficiency of the evidence as to his conviction for engaging in a continuing criminal enterprise; and 2) challenges to his sentence pursuant to <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and the Sentencing Guidelines.  His convictions and sentence were affirmed.  2003 WL 22347008.

STANDARDS FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts ineffective assistance of counsel at trial and on appeal as grounds for relief.  The Tenth Circuit has stated:

> A successful claim of ineffective assistance of counsel must meet the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness." <u>Id</u>. at 688, 104 S.Ct. 2052.  Second, a defendant must show that counsel's deficient performance actually prejudiced his defense. <u>Id</u>. at 687, 104 S.Ct. 2052.

<u>U.S. v. Harms</u>, 371 F.3d 1208, 1211 (10th Cir. 2004).  The court went on to elaborate:

> The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant. . . . [T]he Constitution only requires that counsel's assistance 'fall[] within the wide range of reasonable professional assistance.' <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. 2052.  Precedent from both the Supreme Court and our sister circuits clearly holds that counsel's failure to raise or recognize a potential legal argument does not automatically render counsel's performance constitu-tionally deficient.  '[T]he constitution guarantees criminal defendants only a

6

>   fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" Murray v. Carrier, 477 U.S. 478, 486, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). . . . This court has also recognized that counsel's failure to recognize a potential legal argument does not constitute cause for procedural default. Hopkinson v. Shillinger, 954 F.2d 609, 610 (10th Cir. 1992)."

Id. at 1212.

When examining the conduct of appellate counsel, the relevant questions are "whether appellate counsel was 'objectively unreasonable' in failing to raise [the] . . . claims on direct appeal and, if so, whether there is a 'reasonable probability that, but for his counsel's unreasonable failure' to raise these claims, [the movant] 'would have prevailed on his appeal.'" Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001) cert. denied, 537 U.S. 835 (2002) (quoting Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).

DEFENDANT'S ARGUMENTS FOR RELIEF

   Ineffective assistance of trial counsel

Defendant's first argument for relief makes the somewhat strange contention that his trial counsel was "ineffective" because he was blindsided by the government's request in the middle of trial to change the time periods alleged in parts of the indictment and the court's decision to grant the requested amendment. We reject this argument for the following reasons.

First, defendant does not claim that trial counsel's performance was objectively unreasonable.  The gist of the argument is that trial counsel was unfairly surprised by the government's action and the court's improper decision, not that trial counsel was deficient in comparison to other competent defense counsel.  Second, defendant does not persuasively claim that he suffered prejudice from the amendment of the indictment.  The great majority of the evidence against defendant concerned events after January 1, 1994.  This was an open file case and it should have been clear prior to trial from the evidence and the indictment that most of the government's proof would concern events after January 1, 1994.  Even without amendment of the indictment, the evidence was sufficient to convict defendant of all of the counts of conviction because the law and the instructions did not require the government to prove with precision when the alleged criminal conduct started.  See U.S. v. Cina, 699 F.2d 853, 859 (7th Cir.) cert. denied, 464 U.S. 991 (1983) (temporal scope of conspiracy is not an essential element).  Moreover, the only predicate acts in Count 1 which were amended were the first, eleventh and twelfth predicate acts.  The jury found that defendant committed these predicate acts, but the jury also found that defendant committed predicate acts numbered 3, 4, 7, 8, 9 and 10.  These alleged acts were not

amended during the trial and provided more than sufficient grounds to find defendant guilty of Count 1.  Finally, defendant cannot persuasively claim prejudice from the evidence of acts committed prior to January 1, 1994.  The evidence relating to activity occurring before January 1, 1994 was relevant to establishing the relationship of the alleged co-conspirators as well as establishing the intent, plan and knowledge of defendant and his alleged co-conspirators.  Its relevance was not outweighed by any prejudice to defendant.  Therefore, it was evidence that was relevant and admissible regarding the charges as amended in this case.  In sum, there is no reason to believe that a reasonable jury would have reached a different result if the indictment had not been amended or if it had been amended prior to trial.

Third, to the extent that in this argument defendant is challenging this court's decision to permit the amendment of the indictment, the court rejects that argument for the reasons and authority cited when the court granted the amendment and when the court denied defendant's motion for a new trial.  See also, U.S. v. Soskin, 100 F.3d 1377, 1381 (7th Cir. 1996).

Brady violation

Defendant's second argument for relief is that the government withheld exculpatory evidence.  The evidence to which

defendant refers is that one alleged co-conspirator and government witness, LaPreasha Wynne, was incarcerated from October 1993 to March 1994, which was during the time period when the government alleged that she was involved in a drug conspiracy with defendant and made trips to California to obtain and return with drugs. Defendant asserts that this was a <u>Brady</u> violation. The Third Circuit has reviewed the standards for proving a <u>Brady</u> violation in <u>Hollman v. Wilson</u>, 158 F.3d 177, 180 (3rd Cir. 1998) <u>cert. denied</u>, 525 U.S. 1143 (1999):

> In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. at 87, 83 S.Ct. 1194. A new trial will be granted for a <u>Brady</u> violation only if the defendant can demonstrate both that the prosecution withheld exculpatory evidence, and that the evidence was material, in that the defendant did not receive a fair trial because of its absence. . . . It is well established that impeachment evidence can constitute exculpatory evidence under <u>Brady</u> and its progeny . . . and evidence of a government witness's prior criminal history is evidence which must be produced to the defense.

"Undisclosed evidence is material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Fitzgerald v. Greene</u>, 150 F.3d 357, 367 n.6 (4th Cir.) <u>cert. denied</u>, 525 U.S. 956 (1998) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490

10

(1995); see also, Cargle v. Mullin, 317 F.3d 1196, 1207 (10th Cir. 2003).

The court shall assume for the purposes of this order that the assertions regarding Wynne's incarceration are accurate and that this information was withheld from defendant. Even so, there was no Brady violation because this evidence was not material; there is no reasonable probability that its production would have caused a different result in defendant's trial. This was a lengthy trial. The government presented several witnesses, including Doreen Woods, Jaime Harris, Michael Reece, Heather Reece, Scott Clift and Laresha Bennett, who testified that they were part of a drug conspiracy with defendant. Tapes of defendant's conversations further demonstrated defendant's guilt. LaPreasha Wynne was the most equivocal government witness. Her testimony was filled with uncertainty regarding when she may have taken trips for defendant as part of a drug conspiracy. It is not clear from her testimony or from other testimony that trips occurred between October 1993 and March 1994, when defendant now asserts Wynne was incarcerated. A reasonable jury which disregarded Wynne's testimony entirely would still reach the same result in this case based on the overwhelming evidence from other witnesses. No other result would be reasonable. Furthermore, the result in this case would

11

be the same if the jury did not find that defendant committed the one predicate act in which LaPreasha Wynne is mentioned.

### Perjured testimony

Defendant's next argument is that his conviction and sentence should be vacated because the government presented perjured testimony. This argument was first presented in defendant's motion for a new trial. Doc. No. 167. The court addressed the argument at that time in our order denying the motion for new trial. Doc. No. 169. For the reasons stated in that order, we deny defendant's request for relief on these grounds. See also, U.S. v. Adcox, 19 F.3d 290, 295 (7th Cir. 1994) (mere inconsistencies in the testimony of government witnesses does not demonstrate the knowing use of perjury); U.S. v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989) (same).

Defendant also suggests that the prosecutor improperly vouched for the truthfulness of the government witnesses. The court has examined the portion of the transcript cited by defendant for this proposition, and we disagree with defendant. "Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury

12

supports the witness' testimony." U.S. v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990). A prosecutor may refer to provisions of plea agreements which include truthfulness clauses. U.S. v. Lord, 907 F.2d 1028, 1031 (10th Cir. 1990). "Use of the 'truthfulness' portions of . . . [plea] agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." Bowie, 892 F.2d at 1498. The court may consider defense attacks upon a witness' credibility in considering the comments of a prosecutor. See Moore v. Gibson, 195 F.3d 1152, 1173 (10th Cir. 1999) cert. denied, 530 U.S. 1208 (2000); U.S. v. Villa-Chaparro, 115 F.3d 797, 803 (10th Cir.) cert. denied, 522 U.S. 926 (1997). The court may also consider the court's instructions that the statements of counsel are not evidence and that the jury is the sole judge of the facts and witness credibility. See U.S. v. Santiago, 977 F.2d 517, 520 (10th Cir. 1992).

Of course, defendant did not argue inappropriate vouching by the prosecutor on direct appeal, and no objection at trial was made to the comments of the prosecutor which defendant has cited in his motion. So, this contention should be raised as part of a claim of ineffective assistance of counsel.

The court has considered the context of the prosecutor's

13

statements which were made in response to a lengthy attack upon the government's witnesses in defendant's closing statement. The court has also considered the instructions given to the jury, the great amount of evidence against defendant, and the comments themselves. We conclude that it was not deficient performance by defendant's trial counsel or appellate counsel to fail to object or to appeal on the basis of the alleged vouching. Nor do we believe the prosecutor's comments caused material prejudice to defendant or led to an unfair trial. Therefore, we reject this argument as a basis to vacate defendant's convictions and sentence.

Ineffective assistance of counsel on direct appeal

Defendant contends next that he received ineffective assistance of counsel on direct appeal. Defendant asserts that his attorney on direct appeal was constitutionally ineffective because he failed to raise the previously described perjury argument on direct appeal. For the reasons stated in our order denying the new trial motion, we believe that defendant cannot demonstrate that there is a reasonable probability that defendant would have prevailed on appeal if his counsel on appeal raised the perjury issue. We further reject any claim that counsel on direct appeal was ineffective for failing to raise any other arguments made in defendant's § 2255 motion or

the affidavit filed in support of the motion.  Therefore, we deny this argument for relief.

CONCLUSION

For the above-stated reasons, the court believes the record conclusively demonstrates that defendant is not entitled to relief.  Defendant's motion shall be denied.

**IT IS SO ORDERED.**

Dated this 17th day of June, 2005 at Topeka, Kansas.

> s/Richard D. Rogers
> United States District Judge